Cite as 2023 Ark. App. 239

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-291

| | |
|---|---|
| SEX OFFENDER ASSESSMENT COMMITTEE | Opinion Delivered April 26, 2023 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CV-19-5654] |
| V. | |
| STEVEN A. SERA | |
| APPELLEE | HONORABLE HERBERT T. WRIGHT, JUDGE |
| | CIRCUIT COURT ORDER REVERSED; ADMINISTRATIVE AGENCY DECISION AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Appellant, Sex Offender Assessment Committee (SOAC), appeals the circuit court's order that reduced appellee Seven A. Sera's community-notification risk level from Level 4 to Level 3. SOAC argues that the circuit court erred and that SOAC's original assessment at Level 4 is supported by substantial evidence. We affirm SOAC's assessment at Level 4. The circuit court's order is reversed.

In 1997, Sera's then wife, Nancy, discovered a videotape depicting Sera performing sexual acts with or on different women. In the video, all the women appeared to be unconscious; one of them was Nancy's younger sister. Nancy also found a bottle of Rohypnol pills in her husband's luggage. Law enforcement contacted the women, and each one stated

that she did not consent to the sexual acts observed on film, nor did they consent to being filmed. They each reported accepting drinks from Sera, after which they felt unwell and could not remember anything until the next day. One of the women reported that Sera had given her a drink, after which she blacked out and became ill. The next day, she went to her doctor for drug testing, and her urine showed the presence of Rohypnol, commonly called a date-rape drug because it is a powerful sedative known to cause blackouts, total muscle relaxation, memory loss, stomach problems, and cramping.

In 1998 in Arkansas, Sera was convicted of three counts of introduction of a controlled substance into the body of another person, two counts of kidnapping, one count of first-degree sexual abuse, one count of attempted rape, and one count of rape. These charges related to two different women in Arkansas. Those convictions were affirmed on appeal, and Sera was ultimately denied federal habeas corpus relief. Sera pleaded guilty in 1999 in Texas for second-degree sexual assault of a woman there; he had drugged and then anally penetrated the woman while videotaping the assault. In 2002, Sera pleaded guilty in Missouri for multiple counts of felony sexual assault against a young woman to whom he was related by marriage; Sera also videotaped his encounters with her at least once.[1]

---

[1]All of the Arkansas, Texas, and Missouri crimes were committed in 1996. During this time, Sera lived in Dallas, Texas, with his wife and daughter. Sera operated a lumber company in Texas but traveled to Arkansas as part of his purchase of a lumber mill in Warren, Arkansas. Regarding the Arkansas crimes, he met one woman at a bar, and he met the other woman because she was married to one of Sera's employees. The Texas charges related to a woman Sera met in a Dallas restaurant. The Missouri charges relate to Nancy's sister, who was attending college in Springfield, Missouri.

In October 2017, as Sera approached an opportunity to request parole, Sera underwent a Sex Offender Community Notification Assessment (SOCNA). The assessment included a recitation of the detailed factual summary presented in Sera's appeal to the Arkansas Supreme Court in *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). The supreme court noted that the trial record contained 3,100 pages of pleadings, testimony, and exhibits, so it took pains to provide a "thorough factual summary" in the opinion. The SOCNA relied on an assessment done by a social worker and a psychologist who both reviewed a summary of Sera's history of criminal convictions and propensity to engage with adult women whom he would later drug and rape. The two professionals noted Sera's "high" risk of reoffending and his classification as having an "unspecified paraphilic disorder." SOAC referred to Sera as "SDP," meaning Sera was a sexually dangerous person. The assessment also included an interview with Sera. The SOCNA set the community-notification recommendation at Level 4.

In November 2017, Sera's attorney appealed the SOCNA finding to SOAC. Sera believed he should be assessed at Level 3, not Level 4. Sera acknowledged that these accusations included four women regarding acts in three states, but he asserted that he previously had consensual relationships with each of them, and they were all adults. Sera dissected the SOCNA and took issue with many of its alleged facts, asserting that the women were merely drunk (not drugged) when the alleged assaults occurred. Sera contended that his own psychologist provided him an evaluation in 2003 that deemed him an essentially

3

normal person who should be considered favorably for parole, yet the State had not performed its own psychological assessment.

SOAC considered Sera's request under the administrative-review rules applicable to registered sex offenders and assessed Sera at a Level 4. The assessments are made on a case-by-case basis to determine the public risk posed by a sex offender and the appropriate level of community notification. The assessments are civil in nature. SOAC recognized that Sera was enrolled in the Reduction of Sexual Victimization Program (RSVP), but his composite risk scores were "high" and "moderate-high." SOAC reviewed, among other things, all the SOCNA-generated documents, the prosecutor's report in the 1998 convictions, documents related to both the Missouri and Texas guilty pleas, the supreme court's decision upholding Sera's Arkansas convictions, and a recording of Sera's 2017 assessment interview.[2] SOAC found it appropriate for the SOCNA to rely on the supreme court's analysis of the facts and evidence in the Arkansas convictions and found it notable that Sera pleaded guilty to the offenses that occurred in Texas and Missouri. SOAC noted that Sera had drugged women and recorded himself performing sexual acts on them; the women verified having side effects known to accompany the ingestion of Rohypnol; and the SOCNA had concluded that Sera has an "Unspecified Paraphilic Disorder." SOAC also stated that psychological testing is

_____

[2]In Sera's assessment video, he admittedly put two sedatives in the drink of one Arkansas victim "in a supreme act of arrogance" so that he could videotape having sex with her, which was a "betrayal." He also admitted drugging the other Arkansas woman to the point that she could not walk without assistance. Sera, however, denied going through with the sexual act and videotaping it.

4

not a required component to complete an assessment for these purposes. SOAC discounted the validity and reliability of Sera's 2003 psychological assessment, given the assessment's purpose in 2003 and his psychologist's professional focus in the psycho-sexual arena or on sexual offenders specifically. In sum, SOAC concluded that the record demonstrated that (1) Sera employed a pattern of manipulation, drugs, and force in his offending; (2) he had multiple victims and multiple offenses; and (3) he had strong antisocial personality characteristics, all of which supported an assessment at Level 4.

Sera appealed to the circuit court, which reversed SOAC's assessment. SOAC appeals to our court.

This appeal is made pursuant to, and governed by, provisions of the Administrative Procedure Act (APA), Arkansas Code Annotated sections 25-15-201 et seq. (Repl. 2014 & Supp. 2021), and the Sex Offender Registration Act, Arkansas Code Annotated sections 12-12-901 et seq. (Repl. 2016 & Supp. 2021). The APA provides that an agency decision may be reversed or modified if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; or (4) affected by other error of law. Ark. Code Ann. § 25-15-212(h) (Supp. 2021). The appellate court's review is directed not toward the circuit court but toward the decision of the agency. *State Sex Offender Risk Assessment Comm. v. Wallace*, 2013 Ark. App. 654.

Under the APA, it is not the role of either the circuit courts or the appellate courts to conduct a de novo review of the record; rather, the review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212. *Brown v. Sex Offender Assessment Comm.*, 2014 Ark. App. 236. *Id.* We give the evidence its strongest probative force in favor of the agency's ruling. *Sex Offender Assessment Comm. v. Cochran*, 2019 Ark. App. 396, 587 S.W.3d 562. The question is not whether the evidence would have supported a contrary finding but whether it would support the finding made. *Id.* Substantial evidence is defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and forces the mind to pass beyond conjecture. *Bolding v. Arkansas Pub. Emps. Ret. Sys.*, 2022 Ark. App. 275, 646 S.W.3d 696. Once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary. *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999).

As relevant to this appeal, the community-notification levels are described as follows:

Level 3: Typically offenders in this category have a history of repeat sexual offending, and/or strong antisocial, violent or predatory personality characteristics. These are individuals whose offense and criminal history require notification throughout the community.

Level 4: Sexually Dangerous Person refers to a person who has been adjudicated guilty of a sex offense or acquitted on the grounds of mental disease or defect of a sex offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sex offenses. The designation indicates that the highest and most visible means of community notification is required.

6

004.00.4-14 Ark. Admin. Code (WL current through March 15, 2023). According to Arkansas's 2014 Adult Sex Offenders Guidelines, "Sexually Dangerous Person" status should be considered for persons whose offenses involved multiple instances with multiple victims. *Id.*

Sera asserts that SOAC did not fully investigate all relevant materials, erroneously failed to conduct its own psychological examination, and erroneously failed to review the federal habeas proceedings (in which Sera ultimately did not prevail). Sera contends that SOAC manifested laziness by not gathering and scouring every type of information available and instead dragged the review process out for an inexplicable nineteen months before rendering its decision. Sera also takes issue with the factual underpinnings of his crimes, both admitted and litigated. Sera has failed to demonstrate reversible error.

Having reviewed this appeal under the proper standards, we hold that substantial evidence supports SOAC's assessment, so it automatically follows that its assessment cannot be classified as unreasonable or arbitrary. *See Parkman v. Sex Offender Screening & Risk Assessment Comm.*, 2009 Ark. 205, 307 S.W.3d 6. Sera repeatedly used a sedative to render his multiple victims unconscious and incapable of consenting to the acts performed on or with them. Sera used these women to videotape sexual acts for his own purposes, which came to light only because his wife discovered the videos. In addition, two professionals noted Sera has an "unspecified paraphilic disorder." In these circumstances, we hold that substantial evidence supports the community-notification level assigned by the agency.

The circuit court's order is reversed; the agency's decision is affirmed.

BARRETT, J., agrees.

BROWN, J., concurs.

*Leslie Rutledge*, Att'y Gen., by: *Nga Mahfouz*, Sr. Ass't Att'y Gen., for appellant.

*John Wesley Hall* and *Samantha J. Carpenter*, for appellee.